UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| WYATT W. RASMUSSEN,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF SOUTH DAKOTA, DIVISION OF CHILD SUPPORT,<br><br>Defendant. | 3:22-CV-03021-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING FOR DISMISSAL |

Plaintiff Wyatt W. Rasmussen filed a pro se lawsuit alleging breach of contract under 41 U.S.C. § 6503. Doc. 1. Rasmussen moves for leave to proceed in forma pauperis and has filed a financial affidavit. Doc. 2. This Court now screens Rasmussen's complaint under 28 U.S.C. § 1915(e)(2).

I. **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Rasmussen's financial affidavit, the Court finds that he has insufficient funds to pay the filing fee. Thus, Rasmussen's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

## II. 1915 Screening

### A. Factual Allegations of Rasmussen's Complaint

Rasmussen claims that on April 9, 2015, he entered into a License Agreement with the South Dakota Division of Child Support (DCS) that notified him of the South Dakota Department of Social Services' intention to revoke his driver's license for failure to pay child support. See Doc. 1 at 6 (citing Doc. 1-1 at 2-3). He claims that he asked Ms. Fairbanks, a Child Support Specialist with DCS, when the agreement would be paid or satisfied so that he could obtain a driver's license, and that "Ms. Fairbanks responded, 'You (Plaintiff, Obligor) must pay back all the arrearages and have all the monthly payments paid current and then this agreement will be paid or satisfied.'" Id. He asserts that he relied on this statement and the License Agreement itself when he signed the License Agreement and mailed it back to Ms. Fairbanks that day. Id.

Rasmussen states that his driver's license was revoked in June 2018 because of non-payment of child support. Id. He alleges that he paid the full amount off in June 2019 and attaches to his complaint an Affidavit of Arrearages that shows a zero balance on his child support owed in June 2019. Id. (citing Doc. 1-1 at 4-6). He asserts that he contacted Child Support Specialist Jon Schwarz and was able to acquire satisfactions of the judgments from him. Id. He claims that he asked Schwarz to "turn his driver's license back on and to satisfy the License Agreement and Mr. Schwarz responded, 'Will do.'" Id. Rasmussen alleges that despite this, he could not acquire a driver's license between June 2019 and April 2021 because the DCS hold had not been lifted. Id. He states that he spoke with Schwarz, and Schwarz kept saying that the hold was still in effect and the arrearage was unpaid. Id. He claims that he contacted Jane Bales, the DCS Director, who told him that he needed a judge because the License Agreement would be in effect until Rasmussen's children turned 18. Id. Rasmussen states that he told Bales that this contradicted the License

Agreement. Id. He alleges that he then contacted the DCS legal department and was told that DCS could collect child support by any means possible and that he had to pay the child support to get his driver's license reinstated. Id.

Rasmussen states that on April 17, 2021, he was pulled over for driving with a revoked license. Id. He claims that he received three misdemeanor charges. Id. at 6-7. He also claims that he was placed in custody for two days, made to pay a $500 bond, placed on bond conditions, and appointed an attorney for whom he would have to reimburse the county. Id. at 7. He also claims that he was tased and received a class three concussion and chipped teeth during his encounter with law enforcement. Id. Rasmussen asserts that on December 7, 2021, Jon Schwarz and Jane Bales, along with Jane Schrank,[1] a South Dakota Department of Public Safety employee, testified at a motion hearing in his criminal case. Id. (citing Doc. 1-1 at 7-24). He states that Schwarz lifted the revocation of his driver's license[2] on November 12, 2021, and backdated the removal to June 27, 2019. Id. He also states that this was "to no benefit of [himself]." Id.

Rasmussen claims that Bales testified about how "the DCS revocation process does not follow state law in that . . . SDCL [§] 32-12-65 requires revocation for a specified time . . . and the DCS does not state a specified date or number of days for an obligor's driver's license to be revoked." Id. He also claims that his charge for driving with a revoked license was dismissed on December 3, 2022, and that he was charged for driving without a valid driver's license, a lesser

---

[1] Rasmussen refers to the Department of Public Safety employee as Jane Frank. Doc. 1 at 6. According to the hearing transcript attached to Rasmussen's complaint, the employee's actual name is Jane Schrank. See Doc. 1-1 at 19. This order will refer to Schrank by her actual name.
[2] Rasmussen writes in his complaint that "Schwarz validated [his] driver's license" and "back dated the validity of a driver's license[.]" Doc. 1 at 6. According to the hearing transcript attached to Rasmussen's complaint, Jane Schrank testified that the revocation of Rasmussen's driver's license was lifted on November 12, 2021, with an effective date of June 27, 2019. Doc. 1-1 at 23. Schrank further testified that Rasmussen's driver's license had not been restored or reinstated. Id.

charge, shortly thereafter. Id. He alleges that the Department of Public Safety revokes driving privileges at the same time that it mails notices of revocation, resulting in a risk of unnecessary criminal prosecution when a person whose license has been revoked does not learn of the revocation until the notice is received by mail. Id.

Rasmussen claims that on November 9, 2022, he received a Notice of Nonpayment of Monthly Arrears Obligation which cited the April 9, 2015, License Agreement. Id. (citing Doc. 1-1 at 26). He asserts that the License Agreement was paid and satisfied in 2019 but that "the DCS believes it is a perpetual agreement that is valid until either your children turn 18 years of age, which language is not in the agreement, or until all child support arrearages are paid, and again this language is not in the License Agreement." Id. He alleges that the contract is vague or unconscionable, that it lacks a maturity or satisfaction date, and that it does not follow state law because the revocation is not for a specific period of time. Id. He also alleges that DCS's actions were contradictory because he owed over $4,000 in November 2021 when Schwarz lifted the revocation. Id.

Rasmussen brings a claim against DCS for violation of 41 U.S.C. § 6503, a statute governing the available remedies when a party breaches certain contracts with an agency of the United States. See id. at 2-3; see also 41 U.S.C. § 6502 (providing the required contract terms for "[a] contract made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000[,]" which are the contracts for breach of which 41 U.S.C. § 6503 provides a remedy). He seeks monetary damages for his court-appointed attorney fees and expenses related to his criminal charges. Doc. 1 at 8. He also cites two and a half years of lost driving privileges, frustration at DCS employees' refusal to follow the License Agreement, detainment for two days, $500 bond, living with bond conditions, stress, and

"intentional affliction of emotional distress" as injuries. Id. Rasmussen asks for an injunction against DCS to prevent them from enforcing the License Agreement that he believes has been paid or satisfied. Id. He also asks that this Court order DCS to revise the License Agreement to bring it into compliance with state statute and contract law. Id. He seeks reimbursement to Stanley County of the expenses associated with his prosecution. Id. He asks for monetary damages to reimburse his court appointed attorney fees and criminal court expenses and for "[a]ny irreparable damages the Court may find appropriate." Id.

### B.     Legal Standard

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough

to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court will now assess Rasmussen's complaint under 28 U.S.C. § 1915.

    **C.**    **Rasmussen's Causes of Action**

        **1.**    **41 U.S.C. § 6503 Claim**

Rasmussen seeks to bring a claim against DCS under 41 U.S.C. § 6503. Doc. 1 at 3. This statute provides the United States a remedy for when a party breaches a contract made with an agency of the United States under 41 U.S.C. § 6502. See 41 U.S.C. § 6503(a). The statute does not apply to a contract made with a state or state agency, nor does it provide a remedy to a party

against a governmental entity that breaches a contract. See 41 U.S.C. §§ 6502-6503; see also Bowman v. USDA FSIS, 2019 WL 462715, at *1, 2019 U.S. Dist. LEXIS 18797, at *2-3 (D. Neb. Feb. 6, 2019) (finding that 41 U.S.C. § 6503 "is not a proper basis for Plaintiff's claims" because it only applies to contracts that fall under 41 U.S.C. § 6502). Thus, Rasmussen's claim under 41 U.S.C. § 6503 is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Fourteenth Amendment Procedural Due Process Claim Under 42 U.S.C. § 1983

Rasmussen alleges that DCS failed to follow the process established by state law in handling his driver's license revocation. See Doc. 1 at 6-8. Construing his complaint liberally, Rasmussen brings a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983. See id. "[S]uspension of a driver's license for statutorily defined cause implicates a protectible property interest." Mackey v. Montrym, 443 U.S. 1, 10 (1979). Thus, this Court assumes for purposes of screening that Rasmussen had a property interest protected by the Fourteenth Amendment's Due Process Clause in the lifting of his driver's license revocation, although this Court makes no finding on this point at this time. See id. Because this Court assumes that Rasmussen does have a property interest, "the only question . . . is what process is due to protect against an erroneous deprivation of that interest." See id.

#### a. Fourteenth Amendment Procedural Due Process Claim Against DCS

Rasmussen named DCS in the claim this Court deems a Fourteenth Amendment procedural due process claim. See Doc. 1 at 2, 6-8. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was

7

created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

DCS is a division of the South Dakota Department of Social Services. See Child Support, S. D. Dep't of Soc. Servs., https://dss.sd.gov/childsupport/ (last visited Apr. 14, 2023). According to South Dakota statute, the Department of Social Services was created by the state legislature. See SDCL § 1-36-1. DCS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. See Cory, 457 U.S. at 90-91. Thus, Rasmussen's Fourteenth Amendment Due Process claim against DCS is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

b. **Fourteenth Amendment Procedural Due Process Claim Against Individual Defendants**

Rasmussen alleges that Schwarz assured him that his revocation would be lifted but failed to do so and that Bales told him that DCS could not assist him. Doc. 1 at 6. Although Rasmussen does not name Schwarz and Bales as defendants, construing his complaint liberally, Rasmussen brings a Fourteenth Amendment claim against Schwarz and Bales in their official capacities.[3] See id. at 6-8.

Schwarz and Bales were employees of DCS at the time of the allegations in question. Id. at 6. As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."

---

[3] If a plaintiff does not specify the capacity in which he or she sues a defendant, the suit is treated as only including official capacity claims. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). Rasmussen does not specify the capacity in which he sues Schwarz and Bales. See Doc. 1 at 2, 6-8. Thus, to the extent that this Court construes Rasmussen's claims as being brought against Schwarz and Bales, Rasmussen sues Schwarz and Bales in their official capacities only.

8

Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. See Pearson v. Callahan, 555 U.S. 223, 242-43 (2009) (citing County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Here, Rasmussen seeks both money damages and injunctive relief. Doc. 1 at 8. The State of South Dakota has not waived its sovereign immunity. Thus, Rasmussen's claim against Schwarz and Bales in their official capacities for money damages is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

Rasmussen asks this Court to prevent DCS from "using an unconstitutional[ ] and unconscionable agreement that [he] contends is paid or satisfied." Doc. 1 at 8. He also asks that this Court order "revisions be made by DCS to bring the agreement into compliance with state statute and contract law." Id. Rasmussen provides no explanation as to how the License Agreement violates his due process rights or is otherwise unconstitutional. See id. at 6-8. Instead, he only argues that the License Agreement is unconscionable or otherwise in violation of South Dakota contract law. See id. Thus, Rasmussen's requests for injunctive relief ask this Court to order DCS to comply with South Dakota statutes and South Dakota contract law. See id. at 8.

In Pennhurst State Sch. & Hosp. v. Halderman, the Supreme Court explained that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." 465 U.S. 89, 106 (1984). Based on this

principle, the Court found that the federal courts "lacked jurisdiction to enjoin [the] petitioner state institutions and state officials on the basis of . . . state law." Id. at 124-25. The United States Court of Appeals for the Eighth Circuit has found that "the Eleventh Amendment bars our court from ordering state officials to conform their conduct to state law." Greene v. Dayton, 806 F.3d 1146, 1149 (8th Cir. 2015) (citing Pennhurst, 465 U.S. at 106). Rasmussen asks this Court to order state officials to conform their conduct to state law, which this Court cannot do under Greene. See Doc. 1 at 8; 806 F.3d at 1149 (citing Pennhurst, 465 U.S. at 106). Thus, because Rasmussen seeks relief that this Court cannot grant, his Fourteenth Amendment procedural due process claim against Schwarz and Bales in their official capacities for injunctive relief is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. State-Law Claims

Rasmussen alleges that DCS failed to adhere to the License Agreement through its misinterpretation of its termination conditions and that he has had to "deal with . . . intentional affliction of emotional distress." Doc. 1 at 6-8. Construing his complaint liberally, Rasmussen brings state-law claims for breach of contract and for intentional infliction of emotional distress. See id. This Court construes Rasmussen as bringing these claims against DCS, Schwarz, and Bales. See id.

Under 28 U.S.C. § 1367(a), this Court shall have supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the civil action over which this court has original jurisdiction. But the court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, because all of Rasmussen's federal-law claims have been dismissed, this Court declines to exercise supplemental jurisdiction over his state-law claims. Rasmussen's state-law breach of contract and

intentional infliction of emotional distress claims against DCS, Schwarz, and Bales are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

### III. Order

Accordingly, it is

ORDERED that Rasmussen's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that Rasmussen's claims under 41 U.S.C. § 6503 are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Rasmussen's Fourteenth Amendment due process claim under 42 U.S.C. § 1983 against DCS is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii). It is further

ORDERED that Rasmussen's Fourteenth Amendment due process claim under 42 U.S.C. § 1983 against Schwarz and Bales in their official capacities for money damages relief is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii). It is further

ORDERED that Rasmussen's Fourteenth Amendment due process claim under 42 U.S.C. § 1983 against Schwarz and Bales in their official capacities for injunctive relief is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is finally

ORDERED that Rasmussen's state-law breach of contract and intentional infliction of emotional distress claims against DCS, Schwarz, and Bales are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

DATED April 18th, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE